ROY A. KATRIEL (S.B.N. 265463)
THE KATRIEL LAW FIRM
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 350-4342
Facsimile:  (858) 304-5505
e-mail: rak@katriellaw.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

BRANDON BURNS, On Behalf of Himself And
All Others Similarly Situated,

               Plaintiff,

    v.

NAVISTAR, INC.

and

FORD MOTOR COMPANY

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. **'10 CV 2295 LAB BGS**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1

**NATURE OF THE ACTION**

1.   Plaintiff Brandon Burns, bring this action on behalf of himself and all other similarly situated owners and lessees within California of Defendant Ford Motor Company ("Ford") branded trucks and vehicles equipped with Ford's 6.0 L diesel engine, commonly known as Ford's Power Stroke® Diesel Engine.  The Ford 6.0 L diesel engine was manufactured by co-defendant Navistar, Inc. (formerly known as International Truck and Engine Corporation) ("Navistar").  It powers the diesel version of Ford's Super Duty trucks and Ford Excursion vehicles for model years 2003-2007. This Navistar-designed and manufactured engine powering Ford vehicles has been plagued by serious and pervasive design and manufacturing defects that render the engines and vehicles unmerchantable and unsuitable for use.  So prevalent are the problems plaguing the engine, that Ford has seen fit to sue Navistar in Michigan state courts, alleging that Navistar has failed to shoulder its responsibility for paying its share of the warranty costs that Ford has had to outlay in connection with warranty claims filed by owners and lessees of Ford vehicles equipped with the 6.0 L diesel engine.  Yet, while Ford was internally and in its lawsuit against Navistar representing and documenting at length the pervasive design, manufacture, and reliability defects of an unprecedented nature that plagued the 6.0L diesel engine, it was at the same time concealing this knowledge from unsuspecting consumers like Plaintiff and the members of the putative class.  Not only that, but at the same time that it was internally cataloguing the systemic quality failures and defects in the 6.0 L diesel engine, Ford publicly was disseminating to consumers advertisements that touted and boasted about the superior qualities of the very engine that Ford had privately repudiated as being plagued by "unprecedented problems."   This action seeks relief on behalf of Plaintiff and the members of the putative class for Defendants Ford's and Navistar's violations of California's False Advertising Law, Consumer Legal Remedies Law, and Unfair Competition Law.  Plaintiff also alleges claims on behalf of himself and the members of the class he seeks to represent based on California's common law for negligent performance of a contractual duty, common law fraud, and unjust enrichment. This Class Action Complaint does not seek relief for, and explicitly excludes, any claims for

1   personal injury.

2                    **JURISDICTION AND VENUE**

3       2.   This Court has subject matter over this action pursuant to the Class Action Fairness

4   Act, 28 U.S.C. § 1332(d) (as amended 2005) because the Complaint pleads a class action involving

5   an amount in controversy of more than $5 million, excluding interests and costs, and also involves a

6   putative plaintiff class of diverse citizenship than Defendants.

7       3.   This Court has personal jurisdiction over Ford Motor Company ("Ford") because

8   Ford transacts business within this judicial district, selling million of vehicles in this judicial district

9   through its authorized dealers.  In addition, Defendant Ford has availed itself of the courts in this

10  judicial district numerous times to file various lawsuits, such that it would not offend traditional

11  notions of justice or fair play to hail Defendant Ford into court within this judicial district.  This

12  Court has personal jurisdiction Navistar because it transacts business within this judicial district,

13  injects its vehicles and engines into the stream of commerce within this judicial district, maintains

14  within this judicial district several authorized dealers for sales and repair of its trucks and engines,

15  and ship or otherwise supply replacement parts for their engines to dealers and customers within this

16  judicial district.  Both defendants have registered agents within the State of California that are

17  authorized to accept service of process for lawsuits filed against these entities within the State of

18  California

19      4.   Venue is proper in this district because the sale of Plaintiff's Ford automobile took

20  place within this judicial district, and it was that sale that ultimately gave rise to Plaintiff's claims.

21  The allegedly false advertisements made by Ford also were disseminated within this judicial district.

22  Venue in this district is therefore proper pursuant to 28 U.S.C. § 1391.

23              **THE PARTIES AND THEIR EXPERIENCES**

24      5.   Plaintiff Brandon Burns is a resident of California, and an owner of a 2005 Ford F

25  250 pick up truck equipped with Ford's 6.0 L Diesel Engine that was designed and manufactured by

26  Navistar.  Mr. Burns purchased his vehicle in approximately March 2010 in San Diego, California.

27  Only a few months following his purchase and after having driven the truck only 8,000 miles, Mr.

28

3

Burns' truck began blowing white smoke from its exhaust.  Upon taking the truck to a Ford mechanic, Mr. Burns was informed that his vehicle would have to have its EGR cooler as well as its head bolts replaced because the latter had stretched due to their inadequate design.   Mr. Burns undertook those repairs at considerable expense, but that did not resolve the problems.  Shortly thereafter, when Mr. Burns had driven the truck for only an additional 5,000 miles or so, the truck malfunctioned again, losing power.  This time, Mr. Burns was advised by the Ford mechanic that his truck would require a new oil cooler, and would need to have its head gasket replaced, all at a cost of approximately $5,500, which Ford refused to cover.  Having no choice, Mr. Burns paid the repair bill in order to have his truck repaired.

6.   Defendant Ford Motor Company is a Delaware Corporation, having its principal place of business at One American Road in Dearborn, Michigan.  Ford is one of the world's largest automobile manufacturers, boasting annual revenues in the billions of dollars.  Ford's F-Super Duty truck line has been one of Ford's best-selling vehicle lines over the years, and Ford has boasted about and touted the supposedly first rate quality, superiority, and toughness of these vehicles in its widespread advertisements across various media.  Yet, as detailed more fully below, while Ford publicly was making such representations to consumers, Ford internally recognized that the Ford 6.0 L diesel engine powering its F-Super Duty diesel trucks was plagued by significant quality, design, manufacture, and reliability issues.  So serious were Ford's concerns over the quality, design, and manufacture of the 6.0 L diesel engine, that on or about January 11, 2007, Ford filed suit in Michigan state court against Navistar International Transportation Corporation and International Truck and Engine Corporation (the former name of Navistar, Inc.), the manufacturers of the 6.0 L Diesel engine powering Ford's F Super Duty diesel trucks.  Ford's lawsuit complained, *inter alia*, that Navistar was not living up to its obligation to contribute its share of the significant number of warranty costs that Ford was incurring in having to repair, replace, or repurchase significant numbers of Ford trucks equipped with the diesel engine.  The contractual relationship between Ford and Navistar is detailed more fully below, but for now, it is noteworthy to point out that in its lawsuit against Navistar, Ford represented through sworn affidavits and in legal memoranda filed

before the Michigan state court, *inter alia*, that:

    a.  "the 6.0 L engine has experienced quality problems from the time of its November 2002 launch. It has the highest repair rates of any engine Ford has put into widespread distribution.  As a result, warranty, ONP ["Owner Notification Programs"], and RAV ["Reacquiring A Vehicle"] spending have been enormous, and Ford ultimately was forced to dedicate a team of 70 engineers to assist Navistar on ways to fix the 6.0 L engines already on the road and to improve the quality of the 6.0 L engines still to be produced."

    b.  "Ford has still incurred an $887 million warranty bill for 6.0 L repairs"

    c.  "ONP and RAV costs have also been substantial.  Ford has spent more than $88 million in ONP directly related to the 6.0 L engine, and $84 million on vehicle buy backs due to problems with Navistar's 6.0 L engine."

    d.  "Navistar's 6.0 L Engine Experienced Immediate, Unprecedented Problems."

    e.  "Ford has spent $227 million addressing injector problems in the 6.0L"

    f.  "86% of the injectors [in the 6.0 L diesel engine] replaced by dealers were confirmed to be problematic"

    g.  Ford has spent $182 million in warranty expenses for required turbocharger replacements in Ford vehicles equipped with the 6.0 L diesel engine.

    h.  "Ford has experienced unprecedented repair rates with the 6.0 L engines.  The 6.0 L has had the largest R/1000 (repairs per thousand) rate ever experienced by Ford for an engine in widespread distribution. In fact, the 6.0 L, which represents only 10% of Ford's total engine volume, accounts for approximately 80% of all Ford's warranty spending on engines.  Additionally, warranty spending on the 6.0 L accounts for approximately 25% of Ford's overall warranty spending."

    i.  "Ford and Navistar participated in more than 100 joint projects that focused on identifying and resolving specific issues with the 6.0 L engine parts.  For many of the engine parts, Ford, Navistar, and/or Navistar suppliers, have identified specific design and manufacturing issues that are Navistar's responsibility and that have caused the parts to fail."

    7.  Defendant Navistar, Inc. ("Navistar") is a Delaware corporation, having its principal place of business at 4201 Winfield Road in in Warrenville, Illinois.  Upon information and belief, the corporate entity formerly known as International Truck and Engine Corporation is currently

known as Navistar, Inc.   Pursuant to a contractual agreement between Ford and International Truck and Engine Corporation, Navistar is the sole supplier of diesel engines used in approximately 275,000 Ford diesel pick up trucks annually.  As detailed herein, as a result of Navistar's negligent performance of its contract to design and manufacture the 6.0 L diesel engine, consumers like Plaintiff and the members of the class he seeks to represent have been saddled with defective and unmerchantable engines, and have been forced to incur significant repair and associated expenses. So pervasive were the problems with the design and manufacture of the 6.0 L diesel engine, that on or about January 11, 2007 Ford filed suit against Navistar, alleging, *inter alia*, that Navistar had failed to shoulder its responsibility for paying the enormous warranty costs Ford incurred as a result of the unprecedented problems and quality issues plaguing the 6.0 L diesel engine.  In that lawsuit, Navistar did not deny that quality issues existed with respect to the 6.0 L diesel engine that it had designed and manufactured for Ford, but rather placed the blame on Ford for, *inter alia*, not adequately training its personnel to diagnose, repair, and service the engine, and for not equipping its dealers with the appropriate tools to do so.  Specifically, Navistar's filings in the lawsuit brought by Ford represented, *inter alia*, that:

    a.    "Ford delayed by one year the training of <u>any</u> mechanics in repairing Counter-Plaintiffs' [Navistar's] 6.0 L diesel engine."

    b.    "Dealers have specifically complained to Ford that they did not have sufficient training on diagnosing and repairing the 6.0 L engine manufactured by Counter-Plaintiffs [Navistar]."

    c.    "Ford also failed to provide its dealers with the proper tools to provide the needed repairs and to have certified diesel technicians do the work."

**DEFENDANTS' OMMISSIONS, FAILURE TO DISCLOSE, AND AFFIRMATIVE MISREPRESENTATIONS CONCERNING THE 6.0 L DIESEL ENGINE AND THE FORD VEHICLES IT POWERED**

    8.    As the foregoing allegations demonstrate, both Ford and Navistar knew from the outset that there were severe and pervasive design, manufacturing, and quality issues plaguing the

1   Ford 6.0 L diesel engine powering Ford's trucks.  Yet, despite this knowledge, neither Defendant

2   disclosed any of these issues to consumers.

3       9.      To the contrary, at the same time that Ford and Navistar were internally battling over

4   the quality issues and defects plaguing the Ford 6.0 L diesel engine, Ford was making the precise

5   opposite representations to consumers as to the quality of the engine and the vehicles it powered.

6   For example, in its sales brochure for the 2005 Ford F-250 truck (Mr. Burns' truck), which is

7   attached hereto as Exhibit 1, Ford touted to consumers that:

8

9       a.  The 2005 Ford F-250 and Ford F-350 trucks had the "Best Power," explicitly
            referencing the "6.0 L 32 Valve Power Stroke$^{®}$ V8 Turbo Diesel"

10

11      b.  The Ford F-250 and F-350 were equipped with a "Best in Class" "Longest-
            Lasting Diesel Engine"

12

13      c.  "Longest-Lasting Diesel: Cast-Iron Block Head- This proven architecture
            withstands the higher combustion pressure of peak diesel operation.  The stiff
            bedplate provides rigidity.  Electro-Hydraulic Direct Injection (EDHI), 4-valve

14          induction, and electronic engine control promote efficient combustion for
            optimized horsepower and torque.  All-together the 6.0L Power Stroke$^{®}$ is the

15          longest-lasting diesel in its class."

16

17      d.  "Power Stroke V8 Turbo Diesel – F-Series Super Duty outpulls the competition
            from a dead stop, in a 0-60 mph tow off.  It's done through careful powertrain

18          management from engine to gearing to wheels and tire.  The result is more-
            capable trucks.

19

20      e.  Throughout the brochure, as in all Ford marketing materials about the subject
            trucks, Ford highlighted as its advertising slogan and sales pitch that the trucks

21          were "Built Ford Tough."

22

23      10.     The attached sales brochure is, but one of the many advertisements and

24   representations that Ford disseminated about the Ford F-Super Duty truck series that were equipped

25   with the 6.0 L Power Stroke diesel engine.  Despite knowing that the engines powering these trucks

26   were plagued with what Ford internally described as "unprecedented problems," Ford orchestrated

27   and implemented a widespread advertising and marketing campaign to convince consumers that the

28

precise opposite was true; namely, that the engines and vehicles were of superior quality, design, manufacture, and reliability.  In this regard, Mark Fields, Ford's then President of the Americas, publicly proclaimed that the Navistar 6.0 L Power Stroke diesel engine—the very same engine whose design and quality issues would lead Ford to sue Navistar—was a "great engine."  Despite its knowledge of the Power Stroke® 6.0 L diesel engine's many flaws and quality concerns, Ford trained its dealers throughout the country to specifically tout the supposedly superior attributes of the engine, without ever mentioning its troubled history of design, manufacturing, and reliability defects.

11.     Not only did Ford omit any mention to consumers about the significant design, manufacture, and quality concerns it had identified with the Power Stroke® diesel engine, but at the same time, Ford also failed to inform consumers that Ford, itself, had failed to adequately train or equip its dealers and their repair technicians to service, diagnose, or repair the engines.

### THE CONTRACTUAL RELATIONSHIP BETWEEN CO-DEFENDANTS LEADING TO THE DESIGN AND MANUFACTURE OF THE ILL-FATED 6.0 L DIESEL ENGINE

12.     On October 1997, Navistar and Ford entered into a contractual agreement, commonly known as "Next Generation Diesel Engine Supply Agreement Job #1, 2003 Model Year Through Job Last 2012 Model Year" ("the Agreement")" a copy of which is attached hereto as Exhibit 2 to this Complaint, pursuant to which Navistar agreed to supply Ford with all its requirements for diesel truck engines in North America for model years 2003 through 2012.  The Agreement was subject to a series of amendments or modifications over time, including a first set of amendments entered into by Ford and Navistar on or about April 11, 2003, as well as a second set of amendments entered into by Ford and Navistar on or about November 6, 2004.

13.     Under the Agreement, Navistar was to "design, develop, manufacture, and supply 100 percent of Buyer's [Ford's] requirements for the US and Canada for the Next Generation Diesel II (NGDII) Engine for the 8500 lbs and over GVWR vehicles, as described and defined by the matrix of functional requirements attached as Exhibit A [to the Agreement]." (Ex. 2: Agreement, at

¶ 1.A).

14.     Under the Agreement, Ford was to bear the costs of and administer the training program for Ford technicians to diagnose, repair, and service the engines.  (Ex. 2: Agreement, at ¶ 22.B.2.c)

### PRIOR AND CURRENT CLASS ACTIONS REGARDING THE POWER STROKE® DIESEL ENGINE

15.     This class action is not the first one to allege claims related to the pervasive defects and quality issues found in the Ford Power Stroke® diesel engine.   Ford has previously entered into a nationwide class action settlement in *Williams A. Ambulance, Inc. v. Ford Motor Company*, No. 06-cv-776-MAC (E.D. Tex.) that became final last year.  That class action settlement was reached on behalf of a class of owners or lessees of model year 2003-2007 ambulances equipped with Ford's 6.0 L diesel engine, who complained of pervasive defects and quality issues with the Ford engine.

16.     As part of the class action settlement in *Williams A. Ambulance, Inc.*, the United States District Court for the Eastern District of Texas certified a nationwide class of owners and lessees of model year 2003-2007 ambulances within the United States equipped ambulance prep package 47A and that were equipped with Ford's 6.0 L diesel engine.  Under the terms of that settlement agreement, Ford agreed to, *inter alia*:  extend the coverage of certain aspects of its express warranty for the vehicles and/or specific engine components thereof; implement a claims procedure by which qualified claimants could seek reimbursement for their prior repair expenses for repairs previously undertaken that involved components of the 6.0 L diesel engine; cover 50% of the cost of an engine replacement where such an engine replacement was needed, under certain circumstances; cover certain qualifying towing expenses incurred by the members of the settlement class; reimburse, under certain circumstances, the warranty deductibles that qualifying class members paid as part of obtaining repair services for components of the 6.0 L diesel engine covered by the settlement; provide, at a class member's request, a specific host of options to enhance the

1    maintenance of the vehicles covered by the settlement; and, to pay the class members' attorneys'

2    fees and costs awarded by the district court, subject to the terms set forth in the settlement

3    agreement.

4         17.    The settlement agreement entered into by Ford in *Williams A. Ambulance, Inc.*,

5    purported to resolve the claims of owners and lessees only of ambulances equipped with the Ford

6    6.0 L diesel engines.  That suit and that settlement did nothing to address the claims of non-

7    ambulance owners, who form part of the putative class alleged in this complaint.

8         18.    In addition to this Class Action Complaint, filed before this Court by Plaintiff

9    Brandon Burns, Plaintiff is also informed and believes that a number of other class action

10   complaints have or are currently being filed in federal district courts across the country against Ford

11   and/or Navistar, alleging similar claims under various state laws for alleged defects in the 6.0 L

12   diesel engine powering Ford's trucks.

13

14                       **CLASS ACTION ALLEGATIONS**

15        19.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action as a

16   class action on behalf of all owners and lessees within California of Ford vehicles equipped with

17   Navistar's 6.0 L diesel engine, commonly referred to as the Power Stroke® V8 Turbo diesel engine.

18   Specifically excluded from the class definition are all owners or lessees of such vehicles that are

19   ambulances equipped with the 47A ambulance package (and hence would have been part of the

20   *Williams A. Ambulance, Inc.* class definition).  Also excluded from the class are all judicial officers

21   presiding over this or any related case, as well as all local, state and federal government employees.

22   Plaintiff reserves the right to modify this class definition as discovery or other case circumstances

23   warrant.

24        20.    Although the exact number of class members is presently unknown, Plaintiff is

25   informed and believes and thereon alleges that the class will number in the tens or hundreds of

26   thousands of consumers, thereby making joinder impracticable.  Navigant and Ford have each

27   previously represented that the 6.0 L diesel engine was found in approximately 275,000 Ford trucks

28

10

annually.  Even if a fraction of such vehicles are found in California, the class definition still readily satisfies the numerosity requirement for class certification.

21.     Class certification is also appropriate because there are questions of fact and/or law that are common to the class members.  Among these common questions of fact and/or law are:

a.  Whether the Navistar 6.0 L diesel engine is defective and/or unmerchantable;

b.  Whether Navistar and/or Ford negligently performed their respective contractual duties to manufacture and design the subject engine and to train technicians to repair, diagnose, and service the engine;

c.  Whether Ford engaged in false advertising with respect to the 6.0 L diesel engine, within the meaning of California's False Advertising Law, Section 17500 et. seq. of the California Business and Professions Code;

d.   Whether Defendants violated California's Consumer Legal Remedies Act, Section 1750 et. seq. of California's Civil Code;

e.  Whether Defendants' conduct with respect to the manufacture, design, advertising, sale, and servicing of the 6.0 L diesel engine was deceptive, unfair, and/or unlawful within the meaning of California's Unfair Competition Law, Section 17200 et. seq. of the California Business and Professions Code;

f.  Whether, as a proximate and foreseeable result of Defendants' conduct, Plaintiff and the members of the class he seeks to represent were damaged or injured, and if so, the measure of damages or other remedies;

g.  Whether class members are entitled to the relief sought, and if so, the proper scope of such relief.

22.     Plaintiff's claims are typical of the claims of the absent class members in that Plaintiff, like all the absent class members, claims that he is the owner or lessee of a Ford vehicle within California that is equipped with the 6.0 L diesel engine that is defective, and whose defects were not disclosed, and attributes were misrepresented by Defendants.  Plaintiff is a member of the class he seeks to represent, and the claims he advances on his own behalf are identical to the claims

asserted on behalf of the class.

23.     Plaintiff is an adequate class representative in that, as a member of the class and as a current owner of an allegedly defective Ford vehicle equipped with the 6.0 L diesel engine, his interests are entirely aligned with those of the class.  There are no individual conflicts that prevent Plaintiff from adequately representing the class.  Plaintiff has also retained competent counsel experienced in class action litigation.

24.     Class certification is proper because common questions of fact and law predominate over questions that may affect only individual members of the class. The subject vehicles are manufactured on an assembly line setting, and this case involves a single engine designation—the Ford/Navistar 6.0L diesel engine, that is subject to a common design and manufacturing plan, such that evidence of a defect in the design or manufacture of the engine would be one that would predominate over the entire class membership, as would evidence of Defendants' course of action, knowledge of the alleged defect, and any alleged concealment or misrepresentation thereof.

25.     A class action presents a superior form of adjudication over individual litigation. The costs of litigating this action against large and sophisticated entities like Defendants in comparison to the recovery or relief sought would make individual litigation impracticable.  In addition, forcing individual litigation would risk the result of inconsistent rulings with respect to Defendants' duties owed to the various vehicle owners and lessees.

26.     A class action is manageable.  The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by the Court.

## COUNT I
**(AGAINST DEFENDANT FORD MOTOR COMPANY ONLY)**

**(CONSUMER LEGAL REMEDIES ACT, SECTION 1750 ET. SEQ. OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE)**

27.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the

1    same force and effect as if it had been fully restated herein.

2        28.    At all times relevant hereto, Plaintiff and each Class member was a "consumer," as

3    that term is defined in Civ. Code § 1761(d).

4        29.    At all times relevant hereto, Ford's vehicles, including the Navistar engines powering

5    them constituted "goods," as that term is defined in Civ. Code § 1761(a).

6        30.    At all times relevant hereto, Defendants constituted "persons" as that term is defined

7    in Civ. Code § 1761(c).

8        31.    At all times relevant hereto, Plaintiff's and each Class member's purchase of Ford

9    vehicles that were equipped with the Navistar designed and manufactured 6.0 L diesel engine

10   constituted a "transaction," as that term is defined in Civ. Code § 1761(e).

11       32.    Defendant Ford, through the conduct alleged herein, has engaged in at least the

12   following practices proscribed by the California Consumer Legal Remedies Act:

13             a.    in violation of Cal. Civ. Code §1770(a)(5), Ford has represented that its

14                   vehicles equipped with the 6.0 L diesel engine have sponsorship, approval,

15                   characteristics, ingredients, uses, benefits, or quantities which they do not

16                   have;

17             b.    in violation of Cal. Civ. Code §1770(7), Ford has represented that its

18                   vehicles equipped with the 6.0 L diesel engine are of a particular standard,

19                   quality, or grade, when, in fact, they were of another standard, quality, or

20                   grade;

21             c.    in violation of Cal. Civ. Code §1770(9), Ford has advertised its vehicles

22                   equipped with the 6.0 L diesel engine with the intent not to sell them as

23                   advertised.

24       33.    Plaintiff and members of the class he seeks to represent reasonably relied upon the

25   representations, omissions, and advertisements made by Ford in connection with the qualities,

26   standards, characteristics, and/or attributes of the Ford vehicles equipped with the 6.0 L diesel

27   engine.

28

13

34.     Ford's violations of the Consumer Legal Remedies Act have injured and damaged Plaintiff and the members of the Class he seeks to represent by leaving them with trucks that are defective, of diminished value, and causing Plaintiff and members of the class he seeks to represent to have spent significant out-of-pocket monies in repairs and associated expenses.

35.     As a direct and proximate result of Ford's violations of law, Plaintiff and the Class are entitled to: declaratory and injunctive relief, including a declaration that Ford's practices violate the Consumer Legal Remedies Act; an injunction prohibiting Ford from collecting fees for repairs or replacements to be made to class members' defective 6.0 L engines; mandating that Ford cease any advertising that depicts the 6.0 L diesel engine or the Ford vehicle it powers in a manner that leads the consumer to believe that the engine is of superior quality, design, or reliability, as well as mandating that Ford issue corrective disclaimers and/or advertisements to correct the deceptive nature of its previously disseminated advertisements about its trucks equipped with the 6.0 L diesel engine.

36.     Plaintiff is also entitled to and hereby seeks an order directing Defendants to pay Plaintiff's reasonable attorneys' fees and costs of suit, as awarded by the Court, pursuant to Section 1780(d) of the California Civil Code.

37.     Pursuant to the provisions of Civil Code § 1782, Plaintiff has given notice to Defendant Ford of his intention to file an action under Civil Code §§ 1750, *et seq.* for money damages unless Defendants "correct, or otherwise rectify" the consumer fraud resulting from their actions alleged herein.  Unless Ford complies with the demands made in this statutory notice within 30 days of its submittal, Plaintiff will amend this Class Action Complaint to allege a claim for money damages under the Consumer Legal Remedies Act.

14

## COUNT II

**(AGAINST DEFENDANT FORD MOTOR COMPANY ONLY)**

**(VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW – CALIFORNIA'S BUSINESS AND PROFESSIONS CODE SECTION 17500 ET. SEQ.)**

38.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the same force and effect as if it had been fully restated herein.

39.     As alleged herein, Defendant Ford has engaged in an orchestrated campaign to represent that the 6.0 L diesel engine powering its Super Duty trucks were of a superior quality and standard, and that it was "Built Ford Tough," when, in truth and in fact, that was not the case, and Ford knew it was not the case, as it has been complaining all along to Navistar about the defects and quality problems plaguing the engine design and manufacture.

40.     Ford's advertisements about its vehicles equipped with the Ford 6.0L diesel engine were disseminated by Ford in order to induce Plaintiff and the members of the class he seeks to represent to purchase or lease the subject Ford vehicles.

41.     The advertisements disseminated by Ford about its vehicles equipped with the 6.0 L diesel engine were misleading and false in that they created the impression that the vehicles and engine were of superior quality, design, and reliability, when they were not.  The advertisements were also misleading in that, while touting the supposed superior attributes of the 6.0 L diesel engine, they omitted any mention of Ford's knowledge of the quality, reliability, and design problems of unprecedented nature plaguing the engine.

42.     Plaintiff and the members of the class he seeks to represent reasonably relied upon Ford's advertisements and representations concerning the qualities, standards and attributes of the 6.0 L diesel engine powering its vehicles.

43.     As a result of Ford's false and misleading advertisements about the 6.0 L diesel engine and the Ford vehicles it powered, Plaintiff and the members of the class he seeks to represent have been injured and sustained damages by purchasing vehicles that did not conform to the representations and advertisements made, and that neither they nor any reasonable consumer would

have purchased had the true nature, qualities, attributes and standards of the vehicles and their engines been accurately advertised.

44.     Plaintiff and the members of the class he seeks to represent are entitled to and do seek injunctive relief to have Ford cease and desist from making any misleading or false advertisements concerning the 6.0 L diesel engine powering its vehicles, and directing Ford to issue corrective advertisements or disclaimers to remedy the misleading and false messages conveyed by the advertisements already disseminated.  Plaintiff and the members of the class also seek money damages from Ford for the damages they sustained as a result of the false and misleading advertisements, including compensatory, consequential, and incidental damages for loss of the benefit-of-the bargain, repair and out of pocket expenses incurred, diminished value of the vehicles, and attorneys' fees and costs of suit.

<u>**COUNT III**</u>

**(AGAINST ALL DEFENDANTS)**

**(NEGLIGENT PERFORMANCE OF A CONTRACTUAL DUTY)**

45.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the same force and effect as if it had been fully restated herein.

46.     Defendants Ford and Navistar entered into the Agreement for the design, manufacture, and servicing of a new diesel engine that was to benefit the end-user customer who purchased a Ford vehicle equipped with such an engine.

47.     As a result, each party to the Agreement, and their parent companies assumed a special duty with respect to prospective owners or lessees of vehicles that were to be equipped with the diesel engine that was the subject of the Agreement to undertake their contractual duties relating to the design, manufacture, and servicing of the engine with due care.  Failure to use due and appropriate care would foreseeable detriment and damage future owners of the vehicles equipped with the engine (like Plaintiff and the putative class members), as it was these persons that were the target users of the engine and vehicles.

48.     Defendant Navistar negligently performed its contractual duties to manufacture and

16

design the 6.0 L diesel engine that powered the vehicles owned or leased by Plaintiff and the members of the putative class.

49.     Defendant Ford negligently performed its contractual duties to fund, implement, and administer a program to train and certify technicians capable of diagnosing, repairing, and servicing the 6.0 L diesel engine, and also breached its contractual duty to equip repair technicians with the necessary and appropriate tools needed to diagnose, repair, and service the 6.0 L diesel engine.

50.     As a direct, foreseeable, and proximate result of the negligence of each Defendant, Plaintiff and the members of the class he seeks to represent have been injured, and seek recovery in the form of money damages for the purchase price paid for the negligently designed, manufactured, serviced, and repaired engines, as well as for expenses incurred due to loss-of-use, repair, and associated expenses caused by the malfunction and disrepair of the vehicles brought about by the negligent performance of any of the Defendants.

## COUNT IV

### (AGAINST ALL DEFENDANTS)

### (VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW—SECTION 17200 ET. SEQ. OF CALIF. BUSINESS AND PROFESSIONS CODE)

51.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the same force and effect as if it had been fully restated herein.

52.     California Business and Professions Code §§ 17200 et seq. prohibits all unlawful, unfair or fraudulent business practices and/or acts.  Said statute is liberally construed to protect the public.

53.     In doing the acts alleged herein, Defendants engaged and continue to engage in an unlawful, unfair and/or deceptive business practice in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.  Defendants' wrongful conduct alleged herein is part of a pattern or generalized course of conduct that occurred and continues to occur in the ordinary course of Defendants' business.  Thus, Defendants' conduct impacts the public interest.

54.     Defendant's Ford's acts and practices are unlawful because, *inter alia*, they violate

California's Consumer Legal Remedies Act, California's False Advertising Law, as well as California's common law proscribing the negligent performance of a contractual duty, and the common law proscribing fraud or unjust enrichment.  Defendant Ford's same practices also render Ford's acts alleged herein an unfair business practice.   Ford's actions, particularly its misrepresentations as to the qualities and standards of the 6.0 L diesel engine, as well as Ford's false and misleading advertisements amount to deceptive business practices within the meaning of California's Unfair Competition Law.  Plaintiff reasonably relied upon the representations and omissions made by Ford concerning the Ford 6.0 L diesel engine.

55.     Defendant Navistar's acts and practices are unlawful within the meaning of California's Unfair Competition Law because, *inter alia*, they violated California's common law proscribing the negligent performance of a contractual duty and California's common law proscribing unjust enrichment.  These same acts also amount to unfair as well as deceptive business practices within the meaning of California's Unfair Competition Law.

56.     Plaintiff and the Class members all paid money to Defendants in the form of their purchase of their vehicles equipped with the 6.0 L diesel engine, deductibles for any repair work performed during the warranty coverage period, and repair or replacement work that was not covered by the warranty.  Thus, Plaintiff and the Class all have suffered monetary injury as a result of Defendants' unfair, deceptive and unlawful business practices.  As such, Plaintiff and the Class members have standing to bring their claims for violation of California Bus. & Prof. Code §§ 17200 et seq.

57.     Plaintiff, on behalf of himself and the Class, seeks an order of this Court awarding restitution, injunctive relief and all other relief allowed under Cal. Bus. & Prof. Code § 17203 and Civil Code § 3345, plus interest, attorneys' fees and costs pursuant to, *inter alia*, Code of Civ. Proc. § 1021.5.

## COUNT V

## (AGAINST DEFENDANT FORD MOTOR COMPANY ONLY)

## (FRAUD)

58.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the same force and effect as if it had been fully restated herein.

59.     Through its affirmative statements as well as its omissions, Defendant Ford misrepresented to the public, including Plaintiff and the members of the class he seeks to represent, the qualities, standards, and reliability of the 6.0 L diesel engine found in its vehicles.  Through its affirmative statements as well as its omissions, Defendant Ford also misrepresented to Plaintiff and the members of the class he seeks to represent, Ford's competency and ability to diagnose, repair, and service the subject engine.

60.     At the time that Ford made these misrepresentations and omissions, Ford knew that they were false and misleading.  Nevertheless, Ford made these misrepresentations and omissions with the purpose of inducing the public, including Plaintiff and the members of the class he seeks to represent, to purchase Ford trucks that were equipped with the 6.0 L diesel engine.

61.     Ford knew and/or reasonably believed that if it accurately described the quality, reliability, and design problems plaguing the 6.0 L diesel engine equipping its vehicles, or if it accurately represented Ford's failure to properly train Ford technicians to diagnose, repair, or service the engine, or Ford's failure to provide its dealers and technicians with the necessary tools to diagnose, repair, or service the truck, then reasonable consumers would not purchase Ford vehicles equipped with the 6.0 L diesel engine.

62.     As a result, Ford intentionally engaged in a systematic campaign to defraud the public by fraudulently conveying the impression through advertisements that the 6.0 L diesel engine powering its trucks was of superior quality.

63.     Plaintiff and the members of the class he seeks to represent justifiably relied on Ford's fraudulent misrepresentations and omissions.

64.     As a direct and foreseeable result of Ford's fraud on the public, Plaintiff and the

19

members of the class he seeks to represent were harmed and seek recovery in the form of money damages for, *inter alia*, the purchase price paid for the negligently designed, manufactured, serviced, and repaired engines, that were the subject of Ford's fraudulent representations and omissions, as well as for expenses incurred due to loss-of-use, repair, and associated expenses caused by the malfunction and disrepair of the vehicles forming part of Ford's fraudulent representations and omissions.

**COUNT VI**
**(AGAINST ALL DEFENDANTS)**
**(UNJUST ENRICHMENT)**

65.     Plaintiff hereby incorporates by reference every allegation of this Complaint with the same force and effect as if it had been fully restated herein.

66.     Plaintiff and the Class members all conferred a benefit on Defendants in the form of moneys paid for Ford trucks equipped with the Navistar–designed and manufactured 6.0 L diesel engines, as well as in the form of repair and parts bills to Defendants for repairs and servicing to the vehicle engines.

67.     Defendants appreciated these benefits conveyed upon them by Plaintiff and the Class members, as Defendants, *inter alia*, reported them as revenues in their financial disclosures and reports to investors.

68.     In light of Defendants' failures relating to the design, manufacture, repair, marketing and sale of the subject engines in the Ford vehicles, it would be inequitable to permit Defendants to keep these benefits, as they would unjustly enrich Defendants at the expense of Plaintiff and the members of the Class.

69.     Plaintiff and the Class members are therefore entitled to and do hereby seek an order directing Defendants to disgorge their ill-gotten gains conveyed upon them by Plaintiff and the Class members.

20

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class members pray for the following:

a) That the Court determine that this action may be litigated as a class action, and that Plaintiff and his counsel be appointed class representative and class counsel, respectively;

b) That the Court enter judgment against Defendants and in favor of Plaintiffs, the class and the subclasses on all counts;

c) That Defendants be required by this Court's Order to create a common fund to remedy the defects alleged herein, and to compensate all members of the class and subclasses for their damages and injuries, as well as to compensate Plaintiff's counsel for their attorneys' fees and cost of suit; and, that Defendants be ordered to bear the cost of notice the absent class members, as well as of the administration of this common fund;

d) That damages and/or restitution or disgorgement be awarded to each Plaintiff and class or subclass member according to proof;

e) That the Court award Plaintiffs and the members of the class punitive damages assessed against Defendants;

f) That Plaintiff and the class members be awarded all such other relief as this Court deems just and proper.

Plaintiffs request a jury trial on all counts so triable.

Dated this 5th day of November, 2010.                    Respectfully submitted,

_/s/ Roy A. Katriel_____
Roy A. Katriel (State Bar No. 265463)
THE KATRIEL LAW FIRM
12707 High Bluff Dr., Suite 200
San Diego, CA 92130
Telephone: (858) 350-4342
Facsimile:  (858) 304-5505
e-mail: rak@katriellaw.com

*Counsel for Plaintiff*

21